UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

KATHLEEN G. BROGAN,

                         Plaintiff,

                                                                     **Hon. Hugh B. Scott**

                         v.

                                                                       **16CV720V**

                                                                       **Report**
NANCY A. BERRYHILL[1], Acting                     **and**
Commissioner of Social Security,               **Recommendation**

                        Defendant.

Before the Court are the parties' respective motions for judgment on the pleadings (Docket Nos. 11 (plaintiff), 12 (defendant Commissioner)).

## INTRODUCTION

This is an action brought pursuant to 42 U.S.C. § 405(g) to review the final determination of the Commissioner of Social Security that plaintiff is not disabled and, therefore, is not entitled to disability insurance benefits and/or Supplemental Security Income benefits.

## PROCEDURAL BACKGROUND

The plaintiff ("Kathleen Brogan" or "plaintiff") filed an application for disability insurance benefits on December 21, 2012. That application was denied initially and on reconsideration. The plaintiff appeared before an Administrative Law Judge ("ALJ"), who considered the case de novo and concluded, in a written decision dated October 21, 2014, that

---

[1] Nancy A. Berryhill is now the Acting Commissioner of Social Security, became Acting Commissioner of Social Security. Pursuant to Federal Rule of Civil Procedure 25(d)(1), Ms. Berryhill is substituted for now former Acting Commissioner Carolyn W. Colvin as Defendant in this action; no further action is required, 42 U.S.C. § 405(g).

the plaintiff was not disabled within the meaning of the Social Security Act. The ALJ's decision became the final decision of the Commissioner on July 12, 2016, when the Appeals Council denied plaintiff's request for review.

Plaintiff commenced this action on September 9, 2016 (Docket No. 1). The parties moved for judgment on the pleadings (Docket Nos. 11, 12). Plaintiff filed a Notice of No Reply (Docket No. 13) and the motions were deemed submitted on May 30, 2017 (Docket No. 10).

## **FACTUAL BACKGROUND**[2]

Plaintiff was born on October 15, 1957 (R. 138; Docket No. 11, Pl. Memo. at 4), and has a college education (R. 143; Docket No. 11, Pl. Memo. at 4). The ALJ did not note this in his decision. Plaintiff's past relevant work was a caseworker (R. 27), working as a developmental assistant and social work assistant from 1994 to her onset date of December 14, 2012 (Docket No. 11, Pl. Memo. at 4; R. 144, 19, 27).

Plaintiff's severe impairments are hypertension, status post pacemaker/defibrillator implant, right eye impaired vision (R. 19). The ALJ considered other conditions (congestive heart failure, right ear hearing loss, diabetes, sleep apnea, left knee problems with pain, and atrial tachycardia) and concluded that each of these ailments did not cause significant work-related limitations (R. 20).

---

[2]References noted as "(R.__)" are to the certified record of the administrative proceedings, filed with this Court as Docket No. 6.

**MEDICAL AND VOCATIONAL EVIDENCE**

At step one of the five-step disability analysis (discussed below), the ALJ found that plaintiff had not performed substantial gainful activity since her onset date of December 14, 2012 (R. 19; Docket No. 12, Def. Memo. at 10). At step two, the ALJ found plaintiff had medically determined severe impairments of hypertension, status post pacemaker/defibrillator implant, and right eye impaired vision (R. 19-20; Docket No. 12, Def. Memo. at 10).

Plaintiff testified that she had congenital tetralogy of Fallot, having had corrective surgery and multiple pacemaker/defibrillator placements (R. 22). She also had right eye cataracts, right ear hearing loss, and congestive heart failure with associated headaches (R. 22). Plaintiff experienced swelling in her abdomen and legs that affected her breathing, claiming that she had dizziness, lightheadedness from low blood pressure, daily chest heaviness, monthly headaches, and daily shortness of breath (R. 22, 41-43, 46). She testified that she could not do sustained activity for 15-20 minutes and needed 10 minute breaks (R. 22, 59-61, 63, 67) At home, plaintiff cleans, cooks, washes the dishes and laundry, goes to church, visits others, and drives (R. 23). She claims that she could lift a 50-pound bag of apples, walk for 20 minutes inside her house, stand for 20 minutes, and sit for 1-2 hours (R. 23).

On April 4, 2013, plaintiff's treating cardiologist, Dr. Donald Switzer, wrote that her medical conditions included congestive heart failure, hypertrophic cardiomyopathy, and heart rhythm problems (has pacemaker/defibrillator implanted), noting that she had "a history of telrology of fallot cardiomyopathy, with secondary atrial fbrillation [sic], bioprothetic pulmonary valve with 2 degree heart block" (R. 397). Dr. Switzer opined that plaintiff was limited to not lifting more than 25 pounds, "reduction of any activity when/if shortness-of-breath occurs,

housekeeping duties with weight restrictions (as note above), and walking limitations when symptomatic" (R. 397), concluding that these accommodations would be daily and for the duration of plaintiff's employment "as her condition will be chronic life-long" (R. 397).

Consultative examiner Dr. Hongbaio Liu examined plaintiff on May 23, 2014, and noted that plaintiff had routine annual visits to the cardiologist, was diagnosed with congestive heart failure eight years prior (R. 527). Dr. Liu found that she was short of breath after walking two blocks or going up ten stairs (R. 527). She denied having chest pain (R. 527). Dr. Liu noted that plaintiff was able to clean the house weekly, do the laundry twice a week, and dressed herself daily (R. 528; see Docket No. 12, Def. Memo. at 6). Dr. Liu opined that she should not engage in moderate exertional activities due to her cardiac condition (R. 530; Docket No. 11, Pl. Memo. at 9; Docket No. 12, Def. Memo. at 6-7).

As for the various ailments found by the ALJ not to be limiting her work, plaintiff claimed that she suffered from congestive heart failure (R. 20). But in March 2013 and September 2013, Dr. Switzer found that plaintiff did not have heart failure or symptoms of heart failure (R. 20, 412, 422). Dr. Switzer in March 2013 did note that plaintiff had shortness of breath but not with exertion (R. 422 (Mar. 21, 2013, letter). The ALJ found that plaintiff "exhibits significant status post defibrillator/pacemaker implantation residuals, which prophylactically accounts for any heart problems" (R. 20). Since her valve replacement, Dr. Switzer found that plaintiff to be asymptomatic and generally doing well (R. 20, 412 (Sept. 18, 2013, letter)), noting that "she has not noted any functional impairment or symptoms of heart failure with the loss of AV synchrony in the last month that she has been in the atrial arrhythmia" (R. 412). The ALJ concludes that the evidence "substantiated that care, use of medications and

4

implantation of the defibrillator/pacemaker resolved the claimant's congestive heart failure" (R. 20). The ALJ also found that there was no evidence of significant symptoms from atrial tachycardia, with Dr. Switzer stating that plaintiff's defibrillator was functioning normally without atrial fibrillation (R. 21, 422). Plaintiff had only asymptomatic atrial arrhythmia (R. 21, 412).

As for her claimed hearing loss, the ALJ found that plaintiff heard him during the course of the hearing (R. 20, 23; cf. R. 46 (plaintiff leading with her good ear to hear ALJ during proceeding)). Plaintiff's diabetes was under control with medication (R. 20). Plaintiff complained of knee pain in 2011-12 but denied having pain in June 2014 during the hearing and previously during her March 2012 examination (R. 20, 267, 279). Plaintiff does not use a CPAP machine for her claimed sleep apnea and she slept six hours a night (R. 20). Sleep apnea was only mentioned sporadically in the record and appeared to not restrict her ability to work (R. 20).

At step three of the disability analysis, the ALJ found that the severe impairments did not meet or exceed the criteria for relevant Listings (R. 21; Docket No. 12, Def. Memo. at 10). The ALJ compared plaintiff's medical condition with the criteria for Listings 2.02 (loss of central visual acuity), 4.02 (chronic heart failure), and 4.04 (ischemic heart disease) (R. 21). For Listing 2.02, "remaining vision in the better eye after best correction is 20/200 or less," 20 C.F.R. part 404, Subpt. P, App. 1, Listing 2.02. Plaintiff's left eye visual acuity was not near this listing requirement of 20/200 or less, hence her right eye impairment was found not to meet that Listing (R. 21).

The ALJ also found that plaintiff's hypertension and status post pacemaker implantation residuals did not meet the Listings for 4.02 and 4.04 because her heart failure was corrected with

5

care, medication and implantation of the pacemaker (R. 21). Plaintiff has been on high blood pressure medication to positive results, with no uncontrolled blood pressure readings (R. 23). As for her status post pacemaker/defibrillator implantation, that procedure increased functioning in her heart and she does not have chest pain of a frequency indicative of tachycardia (R. 21); plaintiff denied having chest pains and when she experienced some heart problem, she took medication which alleviated it (R. 21). Plaintiff was found to have normal heart sounds, denied symptoms of palpitations, shortness of breath, syncope, dizziness, dyspnea, orthopnea, or chest pains (R. 23, 283). The most recent echocardiogram before the hearing, taken January 2014, reflected that plaintiff had normal results (R. 23, 566-69). The ALJ also found that plaintiff's hypertension did not meet Listing Section 4.00 because she did not have end organ damage (R. 21).

  The ALJ found that plaintiff had a residual functional capacity that she could perform light work (that is, lift or carry, push or pull 20 pounds occasionally and 10 pounds frequently, be able to sit for two hours of an eight-hour workday and stand and walk for six hours) (R. 22). The ALJ recognized certain limitations on the her ability to perform that work; she could not work in areas of unprotected heights or around heavy, moving or dangerous machinery; she could not climb ropes, ladders, or scaffolds; she occasionally had limitations in far acuity; she could not work in areas where she would be exposed to electronic devices and magnetic fields; and she could not work in areas where she would be exposed to temperature extremes or humidity (R. 22). The ALJ found that plaintiff's "alleged impairments are inconsistent with her activities of daily living" (R. 24, 154-71).

At step four, and persuaded by the testimony of the vocational expert, the ALJ found that plaintiff could resume her past relevant work as a caseworker, finding that the manner she performed that work did not require her to perform actions that were otherwise precluded by her residual functional capacity (R. 27, 64-68). The expert, when posed a hypothetical that included the claimant requiring frequent breaks, opined that that claimant could not work as a caseworker because the frequency of breaks would have that claimant off task for more than 20% of the workday (R. 68). At step four, the ALJ concluded that plaintiff was able to resume her past work and therefore was not disabled (R. 27).

Plaintiff now asserts that Drs. Switzer and Liu opined that plaintiff would need frequent breaks (R. 397, 527-36; Docket No. 11, Pl. Memo. at 8). The ALJ granted "some weight" to Dr. Switzer's April 4, 2013, statement (R. 25 (dating the statement April 14, 2013), 397), noting that "Dr. Switzer disclosed the claimant is employable given her life-long restrictions and capable of a limited range of light work" (R. 25; see R. 397). The ALJ, however, gave "significant weight" to Dr. Switzer's September 18, 2013, assessment that plaintiff had controlled heart problems (R. 25, 412).

On May 23, 2014, Dr. Liu examined plaintiff (R. 527) and "determined that claimant should avoid moderate exertional activities because of her cardiac condition" (R. 530, 26). The ALJ granted only "some weight, but not great weight" to Dr. Liu's opinion since it was based upon a single examination, while more weight was assigned to treating sources (R. 27).

**DISCUSSION**

The only issue to be determined by this Court is whether the ALJ's decision that the plaintiff was not under a disability is supported by substantial evidence. See 42 U.S.C. § 405(g); Rivera v. Sullivan, 923 F.2d 964, 967 (2d Cir. 1991). Substantial evidence is defined as "'more than a mere scintilla. It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. National Labor Relations Bd., 305 U.S. 197, 229 (1938)).

*Standard*

For purposes of both Social Security Insurance and disability insurance benefits, a person is disabled when unable "to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. §§ 423(d)(1)(A) & 1382c(a)(3)(A).

Such a disability will be found to exist only if an individual's "physical or mental impairment or impairments are of such severity that [he or she] is not only unable to do [his or her] previous work but cannot, considering [his or her] age, education, and work experience, engage in any other kind of substantial gainful work which exists in the national economy . . . ." 42 U.S.C. §§ 423(d)(2)(A) & 1382c(a)(3)(B).

The plaintiff bears the initial burden of showing that the impairment prevents the claimant from returning to his or her previous type of employment. Berry v. Schweiker, 675 F.2d 464, 467 (2d Cir. 1982). Once this burden has been met, "the burden shifts to the [Commissioner] to prove the existence of alternative substantial gainful work which exists in the

national economy and which the plaintiff could perform." Id.; see also Dumas v. Schweiker, 712 F.2d 1545, 1551 (2d Cir. 1983); Parker v. Harris, 626 F.2d 225, 231 (2d Cir. 1980).

In order to determine whether the plaintiff is suffering from a disability, the ALJ must employ a five-step inquiry:

(1) whether the plaintiff is currently working;

(2) whether the plaintiff suffers from a severe impairment;

(3) whether the impairment is listed in Appendix 1 of the relevant regulations;

(4) whether the impairment prevents the plaintiff from continuing past relevant work; and

(5) whether the impairment prevents the plaintiff from doing any kind of work.

20 C.F.R. §§ 404.1520 & 416.920; Berry, supra, 675 F.2d at 467. If a plaintiff is found to be either disabled or not disabled at any step in this sequential inquiry, the ALJ's review ends. 20 C.F.R. §§ 404.1520(a) & 416.920(a); Musgrave v. Sullivan, 966 F.2d 1371, 1374 (10th Cir. 1992). However, it should be noted that the ALJ has an affirmative duty to fully develop the record. Gold v. Secretary, 463 F.2d 38, 43 (2d Cir. 1972).

In order to determine whether an admitted impairment prevents a claimant from performing past work, the ALJ is required to review the plaintiff's residual functional capacity and the physical and mental demands of the work that has been done in the past. 20 C.F.R. §§ 404.1520(e) & 416.920(e). The ALJ must then determine the individual's ability to return to past relevant work given the claimant's residual functional capacity. Washington v. Shalala, 37 F.3d 1437, 1442 (10th Cir. 1994).

At issue here is whether the ALJ properly found that plaintiff was not disabled at step four by finding that plaintiff could continue her past relevant work (R. 27). If a claimant is

found to have the residual functional capacity to do his or her past relevant work, that claimant is deemed not to be disabled (R. 19; see Docket No. 11, Pl. Memo. at 3), 20 C.F.R. § 404.1520(a)(4)(iv), (f).

*Application*

I.      Plaintiff's Subjective Complaints

In the instant case, plaintiff's first objection is that the ALJ failed to credit her "well supported" subjective complaints regarding pain and exertion, warranting remand (Docket No. 11, Pl. Memo. at 8, 8-10). She points to the opinions of Drs. Switzer and Liu as support for her subjective complaints (id. at 8), with Dr. Switzer finding that she needed to reduce her activities when symptoms of shortness of breath reoccur and that this condition would be chronic for the rest of her life (id. at 9; R. 397). When she had shortness of breath (R. 422) she would need to reduce her activity, as confirmed by these doctors (R. 397, 530; Docket No. 11, Pl. Memo. at 9). Plaintiff argues that reducing her activity due to her shortness of breath is consistent with the finding that she would need breaks during the eight-hour workday (Docket No. 11, Pl. Memo. at 9). It is also consistent with Dr. Liu's finding that she should not engage in moderate exertional activities (R. 530) and Dr. Switzer's finding that she would need to modify her activities during the rest of her work life (R. 397; Docket No. 11. Pl. Memo. at 9). Plaintiff points out that the vocational expert opined that if an individual needed to take breaks every twenty minutes for ten minutes at a time (R. 68), no employer in the national economy would retain that employee (Docket No. 11, Pl. Memo. at 9).

Defendant Commissioner responds that mere symptomatology or complaint cannot be the basis for a disability finding (Docket No. 12, Def. Memo. at 11), 20 C.F.R. § 404.1529(b). The

ALJ set forth plaintiff's subjective complaints (R. 22-23) but found that her statements regarding their intensity, persistence, and limiting effects were not credible to the extent plaintiff claimed (R. 23; Docket No. 12, Def. Memo. at 12). Defendant points out where in the residual functional capacity plaintiff's limitations were considered (such as avoidance of magnetic fields, or temperature and humidity extremes) (Docket No. 12, Def. Memo. at 12; R. 22). Regarding plaintiff's contention that she needed frequent breaks (more than an employer would tolerate, R. 67-68; see Docket No. 11, Pl. Memo. at 8), defendant notes that Dr. Liu did not comment on her needs for frequent breaks (R. 531-36; Docket No. 12, Def. Memo. at 13), although he commented that plaintiff should avoid moderate exertional activities (R. 530). As for the need for breaks, defendant states that plaintiff would need breaks only when plaintiff's symptoms flared but her medical record indicated that her symptoms were under control, with plaintiff only reporting instances of shortness of breath (Docket No. 12, Def. Memo. at 13; R. 422). Plaintiff's other cardiologist, Dr. Glenn Leonard, concluded that plaintiff had a stable heart pathology and that she should not be restricted from any current activities (R. 294 (letter of Dec. 3, 2012), 25; Docket No. 12, Def. Memo. at 13-14). Pointing to the chores and household activities plaintiff could perform (Docket No. 12, Def. Memo. at 14; R. 54-62, 52-53), defendant discounts her testimony that she could perform them intermittently (R. 53).

As for plaintiff's need to reduce her activities when her symptoms flared, defendant replies that her symptoms generally had been under control (Docket No. 12, Def. Memo. at 13-14). Plaintiff's extensive daily activities belie her claims of limitation (id. at 14), see Rivera v. Harris, 623 F.2d 212, 216 (2d Cir. 1980) (testimony of claimant's pain and shortness of breath

with her ability to perform household tasks support the finding that this claimant could perform light, sedentary work).

Plaintiff testified that due to low blood pressure from her heart failure she felt dizzy and lightheaded, which could occur after standing for long periods of time (R. 41-42; Docket No. 11, Pl. Memo. at 7). She stated that she had shortness of breath on a daily basis, but toward the evening after finishing work (R. 43; Docket No. 11, Pl. Memo. at 7). Although she performed chores at home, she testified that she performed them intermittently and not "every day, all day" (R. 53; Docket No. 11, Pl. Memo. at 7). When the ALJ asked what work plaintiff believed she could perform, she answered that she could do desk work (R. 51-52).

Plaintiff's daily activities, the timing of her shortness of breath (testifying that she got tired after coming home from work (R. 43, 59), and her medical record not reflecting shortness of breath during her examinations as being a consistent problem support the ALJ's finding that plaintiff could resume her work as a caseworker as she performed it. Plaintiff has not presented in this record that she has shortness of breath during the workday itself. Although the vocational expert opined based upon frequent breaks during the workday (R. 68), the record here does not show that plaintiff took those breaks. The medical record shows that her shortness of breath was episodic; it was a constant presence but only manifested itself on occasion. At one appointment in July 2012, plaintiff denied having chest discomfort, dizziness, chest tightness or fatigue (R. 283, 23). The ALJ concluded that plaintiff performed that work as a "light exertional level" (R. 27). She also obtained reasonable accommodations as a Medicaid service coordinator and social work assistant, in that she avoided intervention with physical upsets by her clients (R. 49). This accommodation appears to address the amount of weight plaintiff could

carry (see R. 49-50) and the residual functional capacity reflects that restriction. It is not clear if this accommodation factored in plaintiff's shortness of breath or becoming overly tired at the end of the workday. The installed pacemaker and her medication have stabilized her congenital heart failure. The residual functional capacity found by the ALJ factors in the limited range of light work (R. 25, see R. 397) that plaintiff's doctors found she could perform. Plaintiff's former job as a caseworker, as she performed it with reasonable accommodations was allowable under her residual functional capacity. A cursory review of the definition of caseworker from the Dictionary of Occupational Titles, 195.107-010, does not require exertion or a pace of work that plaintiff's condition would preclude. Under that definition, a caseworker

> Counsels and aids individuals and families requiring assistance of social service agency: Interviews clients with problems, such as personal and family adjustments, finances, employment, food, clothing, housing, and physical and mental impairments to determine nature and degree of problem. Secures information, such as medical, psychological, and social factors contributing to client's situation, and evaluates these and client's capacities. Counsels client individually, in family, or in other small groups regarding plans for meeting needs, and aids client to mobilize inner capacities and environmental resources to improve social functioning. Helps client to modify attitudes and patterns of behavior by increasing understanding of self, personal problems, and client's part in creating them. Refers clients to community resources and other organizations. Compiles records and prepares reports. Reviews service plan and performs follow-up to determine quantity and quality of service provided client and status of client's case. Accesses and records client and community resource information, manually or using computer equipped with keyboard, to input and retrieve information. May secure supplementary information, such as employment, medical records, or school reports. May specialize in providing, monitoring, and evaluating services provided to older adults. May determine client's eligibility for financial assistance. May work in collaboration with other professional disciplines. May be required to visit clients in their homes or in institutions. Usually required to have knowledge and skill in case work method acquired through degree program at school of social work. May be required to possess state license or certificate. When rendering advisory services to agencies, groups, or individuals, may be designated Social-Work Consultant, Casework (social ser.). May aid parents with child rearing problems and children and youth with difficulties in social adjustments.

Id.

II.     Plaintiff's Credibility

Plaintiff next argues that the ALJ disregarded her "stellar" work record in his credibility determination (Docket No. 11, Pl. Memo. at 10). Defendant counters that the ALJ had substantial evidence in other areas to support the credibility determination without considering her work record (Docket No. 12, Def. Memo. at 15), Wavercak v. Astrue, 420 F. App'x 91, 94 (2d Cir. 2011) (summary Order).

The Second Circuit held that "It is the function of the [Commissioner], not ourselves . . . to appraise the credibility of witnesses, including the claimant," Carroll v. Sec'y of Health & Human Servs., 705 F.2d 638, 642 (2d Cir. 1983); Wavercak, supra, 420 F. App'x at 94. Work history "may be deemed probative of credibility," Schaal v. Apfel, 134 F.3d 496, 502 (2d Cir. 1998); Wavercak, supra, 420 F. App'x at 94, but that is one of many factors in assessing credibility, Schaal, supra, 134 F.3d at 502; Wavercak, supra, 420 F. App'x at 94. The fact that the ALJ in assessing a claimant's credibility does not expressly mention that person's work history does not undermine the credibility assessment, Wavercak, supra, 420 F. App'x at 94.

Here (as in Wavercak, supra, 420 F. App'x at 94), substantial evidence supports the ALJ's finding that plaintiff was capable of performing light work and returning to her past relevant work as conditioned by her employer. The ALJ factored in her work record in that regard in finding that she could return to it in the manner she performed it. In assessing her credibility, the ALJ merely found that the intensity, persistence and limiting effects of her symptoms were not to the extent she claimed; they were credible but not to the entirety of her

14

statements (R. 23, 24). The ALJ properly assessed plaintiff's credibility and did not need to address expressly her work record in considering her credibility.

## CONCLUSION

For the foregoing reasons, this Court recommends that the decision of the Commissioner be **AFFIRMED**. Defendant's motion for judgment on the pleadings (Docket No. 12) should be **GRANTED** and plaintiff's motion for similar relief in her favor (Docket No. 11) should be **DENIED**.

Pursuant to 28 U.S.C. § 636(b)(1), it is hereby ordered that this Report & Recommendation be filed with the Clerk of the Court and that the Clerk shall send a copy of the Report & Recommendation to all parties.

**ANY OBJECTIONS to this Report & Recommendation must be filed with the Clerk of this Court within fourteen (14) days after receipt of a copy of this Report & Recommendation in accordance with 28 U.S.C. § 636(b)(1), Fed. R. Civ. P. 72(b) and W.D.N.Y. Local Civil Rule 72(b).**

**FAILURE TO FILE OBJECTIONS TO THIS REPORT & RECOMMENDATION WITHIN THE SPECIFIED TIME OR TO REQUEST AN EXTENSION OF SUCH TIME WAIVES THE RIGHT TO APPEAL ANY SUBSEQUENT DISTRICT COURT'S ORDER ADOPTING THE RECOMMENDATIONS CONTAINED HEREIN.** Thomas v. Arn, 474 U.S. 140 (1985); F.D.I.C. v. Hillcrest Associates, 66 F.3d 566 (2d Cir. 1995); Wesolak v. Canadair Ltd., 838 F.2d 55 (2d Cir. 1988).

The District Court on de novo review will ordinarily refuse to consider arguments, case law and/or evidentiary material which could have been, but was not, presented to the Magistrate Judge in the first instance.   See Patterson-Leitch Co. Inc. v. Massachusetts Municipal Wholesale Electric Co., 840 F.2d 985 (1st Cir. 1988).

Finally, the parties are reminded that, pursuant to W.D.N.Y. Local Civil Rule 72(b), "[w]ritten objections to proposed findings of fact and recommendations for disposition submitted by a Magistrate Judge pursuant to 28 U.S.C. § 636(b)(1)(B) shall specifically identify the portions of the proposed findings and recommendations to which objection is made and the basis for each objection, and shall be supported by legal authority."  **Failure to comply with the provisions of Rule 72(b) may result in the District Court's refusal to consider the objection.**

So Ordered.

*s/Hugh B. Scott*
Hon. Hugh B. Scott
United States Magistrate Judge

Buffalo, New York
August 16, 2017